Document       Page 1 of 20

SIGNED THIS: November 21, 2016

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 15-71627 |
| AARON E. RUEBLING and | ) | |
| LINDA RUEBLING, | ) | |
| | ) | Chapter 13 |
| Debtors. | ) | |

# A M E N D E D
# O P I N I O N

Before the Court are an Application for Compensation filed by the Debtors' attorney, Kevin Linder, and an Order to Show Cause issued by the Court requiring Attorney Linder to show cause why he should not be sanctioned for his conduct in this case. After considering the documents filed in this case, including objections of the Chapter 13 Trustee and the United States Trustee to the Application for Compensation, and hearing the arguments of counsel, the

-1-

Application for Compensation will be denied in its entirety and Attorney Linder will be sanctioned.

## I. Factual and Procedural Background

On October 22, 2015, a voluntary petition under Chapter 13 was filed by Attorney Kevin Linder for Aaron E. Ruebling and Linda Ruebling ("Debtors"). The Debtors' electronic signatures were affixed to the petition and to an accompanying statement verifying the Debtors' Social Security numbers. The documents were dated as having been signed on October 22nd. The Debtors' schedules, Chapter 13 plan, statement of financial affairs, and other required documents were filed November 6, 2015. These additional documents also bore the Debtors' electronic signatures and were dated November 4, 2015.

The Debtors attended their meeting of creditors with the Chapter 13 Trustee ("Trustee") on December 9, 2015. The Trustee's confirmation report filed the next day states that he expected the Debtors to file both an amended Schedule D and an amended plan. All parties agree that during the meeting, the Debtors disclosed that they had a secured debt to Purchasing Power for several items of household goods they had purchased and that an amended schedule was required to add Purchasing Power to the case. After the Debtors failed to file the anticipated amended schedule and amended plan within the time allotted by the Trustee, a hearing on confirmation of the original plan was set. At that brief hearing, the Debtors' attorney requested an additional fourteen days to file the amended plan and that extension of time was granted.

A First Amended Plan was filed by the Debtors on February 9, 2016. The

Trustee objected to confirmation of the First Amended Plan for a number of reasons, including the Debtors' continued failure to schedule Purchasing Power as a creditor. Shortly after the Trustee's objection was filed, the Debtors filed amended schedules adding several creditors but did not list Purchasing Power on those amendments. At a hearing on the First Amended Plan on March 22, 2016, the Debtors' attorney acknowledged the Trustee's objections to the First Amended Plan. He asked for and was granted an additional twenty-one days to file yet another amended plan.

The Debtors filed their Second Amended Plan on April 12, 2016. Again, the Trustee objected to confirmation based, in part, on the continued failure to schedule Purchasing Power as a creditor. The Trustee noted in his objection that post-petition pay advices of the Debtors showed ongoing deductions, which the Debtors had testified were for payments on the items obtained through Purchasing Power. Finally, on May 16, 2016, an amended Schedule D adding Purchasing Power as a secured creditor was filed by Attorney Linder on behalf of the Debtors. On the same day, the Debtors also filed a Third Amended Plan proposing to make direct payments to Purchasing Power on a debt of approximately $1300 secured by household goods.

At a hearing, which had been previously scheduled on the Second Amended Plan, the Court noted that Purchasing Power had been added to the case after the claims bar date had run and therefore could not file a claim or otherwise meaningfully participate in the case. Attorney Linder blamed the Debtors for the delay in adding Purchasing Power to the case and suggested that, because the Third Amended Plan was proposing a 100% dividend to all creditors, the delay was

harmless. The Court stated that because of the delay, Attorney Linder would not be awarded the standard no-look attorney fees even if no objections were filed to the confirmation of the Third Amended Plan.

In the absence of objection, the Third Amended Plan was confirmed on July 12, 2016. In the confirmation order, Attorney Linder was denied the no-look fee provided for in the Third Amended Plan and was directed to file an application for compensation within thirty days.

Attorney Linder subsequently filed his Application for Compensation ("Application") seeking an award of $3300 in fees and $463 in costs. He reported in the Application that he had received $1100 from the Debtors before the case was filed and suggested that after payment of the $463 in expenses, he had applied $697 to his attorney fees and was owed a balance of $2603 in fees.[1] Attorney Linder attached to the Application an itemized statement of the services rendered to the Debtors. The itemization included the amount of time spent on various tasks but did not provide an actual calculation of the amounts charged. The Application stated that Attorney Linder's hourly rate is $200 for office time and $250 for court time and that his paralegal's time is billed at $125 per hour.

The Trustee filed an objection to the Application, pointing out several discrepancies with the time entries and, most importantly, noting that the time

---

[1] Attorney Linder's calculation appears to be incorrect. After expending $463 of the $1100 paid by the Debtors, he would have had only $637 to apply to his fees. If he was awarded the full $3300 requested, he would still be owed $2663. All three of the plans filed by Attorney Linder on behalf of the Debtors recite that he had applied $697 of the retainer to his fees and was only owed a balance of $2603. If the Application and plans state the correct amount still due, then either the amount of the retainer received or the amount of costs expended has been incorrectly reported by Attorney Linder.

entries suggested the Debtors had not met with either Attorney Linder or his paralegal to sign their petition before it was filed. In a supplemental objection, the Trustee reported that he had obtained "wet signature" copies of the documents filed by Attorney Linder for the Debtors and had confirmed from a review of those documents that the Debtors had not signed their petition until approximately twelve days after it had been filed. The United States Trustee ("UST") also filed an objection to the Application, noting that the Debtors had neither reviewed nor signed their petition before filing. The UST complained that the time records showed Attorney Linder had not personally reviewed or signed the documents filed to commence the case. The UST suggested that all fees requested by Attorney Linder should be denied and that he be ordered to disgorge fees previously paid. Based on the filings of the Trustee and the UST, an order to show cause ("OTSC") was issued *sua sponte* by the Court, notifying Attorney Linder that he would be required to appear and show cause why additional sanctions, such as suspension of his electronic filing privileges, should not be imposed.

Attorney Bruce Kugler entered an appearance for Attorney Linder and, prior to the hearing, filed a Response on his behalf. In the Response, Attorney Kugler asserted that, although they admittedly did not sign their petition before it was filed, the Debtors nevertheless authorized the filing. He blamed the filing without the "wet signatures" on a miscommunication between Attorney Linder and his paralegal. He also argued that Attorney Linder provided adequate legal representation to the Debtors, justifying the fees requested. He defended the failure to timely file an amended schedule to add Purchasing Power as a creditor by asserting that the Debtors provided conflicting information about whether they

actually owed anything to Purchasing Power when they filed. Attorney Kugler also said that Attorney Linder checked the Debtors' credit report and, because Purchasing Power was not shown on that report, he was justified in not timely preparing the amended schedule.

At the hearing, Attorney Kugler appeared with Attorney Linder and admitted that Attorney Linder was fully responsible for the petition having been filed before the Debtors' signatures were obtained. He also admitted that the Debtors' electronic signatures on their First and Second Amended Plans were improperly affixed because the Debtors had never actually signed those plans. And he admitted that, although the Debtors' amended Schedule D filed May 16, 2016, contained their electronic signatures, the Debtors also had not signed that document before it was filed. Nevertheless, Attorney Kugler argued that Attorney Linder should not be sanctioned because his conduct was not willful and he had not knowingly violated the Local Rules and this Court's Standing Order on electronic filing. He asserted that Attorney Linder was distracted due to health issues involving his parents and therefore authorized his paralegal to file the documents, assuming she had obtained the Debtors' signatures. Attorney Kugler also reported that he had spoken with the paralegal and she had admitted to "cutting corners."

Attorney Linder also spoke on his own behalf. He stated that he accepted full responsibility for the problems that had occurred in the case. He reported that he had hired Attorney Kugler to review all of his office procedures and provide training to him and his paralegal in an effort to avoid a recurrence of the problems.

The UST was represented at the hearing by Attorney Timothy Ruppel, who advised that after learning of the problems in this case from the Trustee, he requested a sample of documents from five additional cases from Attorney Linder. In one of those cases, he discovered that the debtors had signed their documents in February 2016, but the electronic signatures affixed to the documents filed in June were dated in May. He expressed concern about obtaining signatures significantly in advance of filing and then changing the dates on the electronic version of the documents so as to misrepresent when the documents were actually signed. Attorney Ruppel said that case trustees and the UST have a right to rely on the date shown on electronically filed documents as verification that the information provided is true and correct as of the reported date. He argued that the entire electronic filing system is based on trust and that the integrity of the entire system is undercut when attorneys violate that trust.

The matter was taken under advisement after the hearing and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The awarding of professional fees and matters involving the administration of an estate are core proceedings. 28 U.S.C. §157(b)(2)(A), (B). The matters here arise directly from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided

by a bankruptcy judge. *See Stern v. Marshall,* 564 U.S. 462, 499 (2011).

### III. Legal Analysis

**A.  Attorney Linder must be sanctioned for his conduct in this case.**

A voluntary bankruptcy case "is commenced by the filing . . . of a petition . . . by an entity that may be a debtor[.]" 11 U.S.C. §301(a). "All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. §1746." Fed. R. Bankr. P. 1008. When an unsworn declaration is made, it must be in writing and dated and the maker must declare under penalty of perjury that the information provided is true and correct. 28 U.S.C. §1746. The electronic signatures of the Debtors affixed to the petition represented under penalty of perjury that they had signed the petition on October 22, 2015, and the information provided therein was true and correct.

Attorney Linder's electronic signature was also affixed to the petition. By signing and filing the petition, Attorney Linder certified that to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the factual allegations of the petition had evidentiary support. Fed. R. Bankr. P. 9011(b). That is, he certified that based on his actual inquiry, the Debtors had signed the petition on October 22, 2015, and that the information contained in the petition was true and correct.

The Local Rules of the District Court of the Central District of Illinois, which apply in all bankruptcy cases and proceedings, provide that when the signature of a party is required on a document and the document is to be filed electronically, the original signature of any non-filing party must be obtained before the

document is electronically filed. CDIL-LR 11.4(B)(1). The Third General Order Authorizing Electronic Case Filing entered by the judges of the United States Bankruptcy Court for the Central District of Illinois on January 10, 2007 ("Standing Order"), also provides that when an electronic signature is affixed to a filed document, the filer must have and maintain the originally signed document.

When Attorney Linder filed the petition in this case without first obtaining the signatures of the Debtors on it, he violated provisions of the Bankruptcy Code, the Bankruptcy Rules, the Judicial Code (Title 28), the Local Rules, and this Court's Standing Order. Nevertheless, he says that the filing was authorized by the Debtors and therefore he should not be sanctioned. His position is without merit. "[D]ebtors are not legally capable of granting attorneys permission to violate" controlling law. *In re Husain*, 533 B.R. 658, 696 (Bankr. N.D. Ill. 2015). The question of whether an attorney can sign a client's name to a document is not a "grey area" or something about which reasonable people might differ. *Id.* at 695. Unless an attorney holds a formal power of attorney for the client or has been appointed as the client's guardian, the attorney cannot sign the client's name to bankruptcy documents and cannot make the required declaration under penalty of perjury for the client. *Id.* at 695-96; *In re Hurford*, 290 B.R. 299, 302 (Bankr. E.D. Mich. 2003); *see also* 28 U.S.C. §1746. The Debtors could not authorize Attorney Linder or his paralegal to sign their names to their bankruptcy petition and they could not relieve Attorney Linder of his obligations under the Local Rules or Standing Order. Regardless of any urgency—real or perceived—to get a case on file, no circumstances ever justify an attorney filing a petition, schedules, or

statement of affairs without first obtaining a debtor's actual signature on the documents. *In re Stomberg*, 487 B.R. 775, 807 (Bankr. S.D. Tex. 2013) (citing *In re Phillips*, 317 B.R. 518, 521 (8th Cir. BAP 2004)); *see also In re Mayfield*, 2016 WL 3958982, at *3 (Bankr. E.D. Cal. July 15, 2016) (A debtor's "wet signature" on required documents must be an actual handwritten signature made in ink; the ESIGN Act does not apply. 15 U.S.C. §7001(a)(1), (b)(1)).

Attorney Linder also claims that he should not be sanctioned for his conduct because, although his actions violated the Local Rules and the Standing Order, his actions were not done knowingly or willfully. This argument is also without merit.

The Application shows that after Attorney Linder had an initial meeting with the Debtors in May 2015, he had virtually nothing to do with the preparation, execution, and filing of the Debtors' bankruptcy documents. His paralegal prepared all of the documents and met with the Debtors without supervision by Attorney Linder. Neither Attorney Linder nor his paralegal logged time to review or analyze the information provided by the Debtors. The issue that started the problems here arose because a creditor, who was being paid by a deduction from one of the Debtors' paychecks, was not disclosed on the schedules or provided for in the plan. A careful review of the Debtors' pay stubs would have disclosed the creditor and an inquiry about the creditor should have been made. But because the paralegal apparently just typed information provided by the Debtors into a software program without analyzing it and Attorney Linder did not make any effort to review the information, no inquiry about the omitted creditor was made and the problems occurred.

Attorney Linder justifies his conduct by saying that he was out of the office dealing with family health issues when the Debtors' petition was filed. He says that he talked to his paralegal about filing the petition and authorized her to go ahead because he assumed that the Debtors had signed the petition. Attorney Linder admits that he did not ask if his assumption was correct. He makes a similar claim about the later filing of the amended Schedule D without the Debtors having first signed that document; he was out of the office and assumed but did not verify that they had signed the document when he authorized its filing. Attorney Linder claims that he had a policy in place and his paralegal knew she should obtain original signatures before documents were filed. He provides no explanation, however, of why he never followed up to see that the policy was being honored or how repeated violations of the policy could have occurred in this case.[2]

It is obvious that Attorney Linder has made a wholesale turnover of his bankruptcy practice to an inadequately trained and wholly unsupervised clerical staff member. He allows his paralegal to complete documents and file them without review and he makes no real effort to ensure compliance with the Local Rules and Standing Order. Attorney Linder cannot ethically or professionally

---

[2] The Court is not unsympathetic to Attorney Linder's claim that he was distracted by his parents' health problems. But it is precisely because such distractions occur that attorneys must properly train their staff and have clear policies and procedures in place in their offices. And it does not appear that Attorney Linder's personal distractions were really the cause of the problems here. Rather, it seems likely that the result here would have been no different if Attorney Linder had been in the office on the day the petition was filed. The Debtors say he was in the office on November 4th, when they finally signed the paperwork, but his time records show that he still did not review the bankruptcy documents or the Debtors' financial information. If Attorney Linder does not analyze the information provided by his clients or review his paralegal's work—and it clearly appears that he does not do either—then the fact that he was out of the office on the day this case was filed was not the cause of the problems here.

practice law by handing off work to his paralegal, asking only limited questions of her regarding completion of the work, and then claiming that he had no knowledge of what was going on. He has a duty to know what is going on in his office and his self-imposed ignorance is no defense. To the contrary, it is an aggravating factor. And the fact that counsel for the UST found another violation of §1746 in a sample of only five of Attorney Linder's other cases suggests that what occurred here is not an isolated incident.[3] Attorney Linder must be sanctioned.

Bankruptcy courts have the authority to sanction attorney misconduct. 11 U.S.C. §105(a); Fed. R. Bankr. P. 9011; *In re Rimsat, Ltd.*, 212 F.3d 1039, 1048-49 (7th Cir. 2000); *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997); *Stomberg*, 487 B.R. at 816-17. Bankruptcy court sanctions may include denial or disgorgement of fees, revocation of electronic filing privileges, monetary penalties, assessment of the costs and fees of other parties, the imposition of continuing legal education requirements, or other conditions related to the attorney's continued practice necessary to deter future misconduct. *Husian*, 533 B.R. at 699-701; *Stomberg*,

---

[3] The case mentioned by Attorney Ruppel was In re Brock Flinn and Melanie Flinn (#16-71018). The UST discovered that the Flinns had signed their petition and other documents in February 2016, but, when the case was filed in June, their electronic signatures were affixed and dated as of May 17, 2016. Unsworn declarations must be dated. 28 U.S.C. §1746. Attorney Linder's filing of the documents with the changed date constituted a serious misrepresentation of the accuracy of the information as of the date of the purported signatures. This Court does not know why there was such a significant time gap between the signing and the filing of the documents. But as a practical matter, documents created in February would likely not be accurate when filed in June. Much of the information required to be included on the schedules and statement of financial affairs is time-sensitive. In fact, Attorney Ruppel selected this case as part of his sample because he had filed a motion to dismiss the case for abuse alleging that the Flinns' means-test calculation was inaccurate and did not properly reflect overtime pay received during the six-month period before filing. Attorneys cannot collect signatures in advance of final document preparation and then use the on-file signature when the documents are completed. *Husain*, 533 B.R. at 696.

487 B.R. at 823-24; *In re Moffett*, 2012 WL 693362, at *4 (Bankr. C.D. Ill. Mar. 2, 2012).

The UST requested that Attorney Linder be denied any additional fees and be ordered to disgorge fees already received. Denial of all compensation is an appropriate sanction for the serious misconduct here. The Application will be denied in all respects and Attorney Linder will be ordered to disgorge to the Debtors the $1100 paid by them as a retainer. The Debtors have a confirmed plan that vested property of the estate in them upon confirmation and, accordingly, they are entitled to the refund. This is true even though one of the Debtors, Mr. Ruebling, signed and submitted an affidavit saying that the Debtors were very satisfied with Attorney Linder's services. No evidence was presented that the Debtors had been advised as to the serious nature of the misconduct here and that the misconduct could have subjected them to the dismissal of their case or loss of their discharge. *Husain*, 533 B.R. at 696.

Denial of compensation alone is not a sufficient sanction for Attorney Linder's conduct; additional sanctions must be imposed to impress upon Attorney Linder the seriousness of his misconduct. In the OTSC, he was advised that the Court was considering revoking his electronic filing privileges. Attorney Kugler argued at the hearing that such a sanction would punish not only Attorney Linder but also his clients with pending cases and clients who have already engaged him to file cases in the future. Although it is likely that all such clients could find competent substitute counsel, the Court's goal in sanctioning Attorney Linder is not to create disruption in the lives of his debtor clients. Accordingly, a more limited sanction designed to force Attorney Linder to raise the quality of his

practice will be imposed as a condition of maintaining his electronic filing privileges.

Attorney Linder will be required to focus on his bankruptcy practice and to review all documents filed in his cases both as to substance and form. His practice of allowing his paralegal to create documents and file them without any supervision or review will have to stop. As set forth above, the problems in this case initially occurred because neither Attorney Linder nor his paralegal thoroughly reviewed the Debtors' pay stubs before preparing the original schedules. Then, after the Trustee questioned the deductions for Purchasing Power on the pay stubs, they failed to review the post-petition pay stubs provided to the Trustee that evidenced the deductions were ongoing. Attorney Linder's hindsight justification that he did not need to schedule Purchasing Power because it is not shown as a creditor on the Debtors' credit report is not persuasive. If Purchasing Power was continuing to deduct from the Debtors post-petition—and it was—then Attorney Linder had clear evidence of the existence of a debt that should have been scheduled. Attorney Linder never undertook a genuine analysis of whether Purchasing Power was a creditor and that caused the untimely filing of the amended Schedule D that lead to the requirement of a fee application that, in turn, led to the discovery of the lack of "wet signatures." A sanction that addresses this misconduct must be imposed.

For a period of one year, Attorney Linder will be required to be personally present and witness the signing of any document by a debtor that will be filed with the debtor's actual or electronic signature affixed. For a period of an additional one year thereafter, Attorney Linder will not be required to witness debtor

signatures but will be required to personally inspect a debtor's "wet signature" on documents before those documents are filed. To ensure compliance with these requirements, on every occasion when a document is filed that has a debtor's actual or electronic signature affixed, Attorney Linder will be required to file an affidavit identifying the document filed and the date the document was signed. In each affidavit, Attorney Linder will be required to certify that he witnessed the signing during the first year or inspected the original signed document during the second year. Every affidavit must also state—because it is required to be true—that Attorney Linder fully complied with his obligations under Rule 9011 with respect to the preparation, signing, and filing of the document. *See* Fed. R. Bankr. P. 9011. To be clear, Attorney Linder's certification of compliance with Rule 9011 will mean that he made a reasonable inquiry into the facts underlying the information contained in the filed document. And even though the Court is not requiring an affidavit to be filed with documents requiring only his own signature, Attorney Linder is admonished that Rule 9011 applies to all such documents as well.

Attorney Linder's days of blaming his paralegal and clients for the inaccuracies in his documents are over. If he complies with the sanctions order, he will have to look closely at everything that is filed using his electronic filing credentials and will have to review all of the financial information provided by debtors used in the preparation of their bankruptcy documents. If information contained on pay stubs, tax returns, and bank statements is overlooked, it will be his fault. And Attorney Linder will be fully responsible for making sure that no debtor's electronic signature is ever again affixed to any document before a "wet

-15-

signature" is obtained. If he complies with the sanction order, no one on his staff will be able to cut corners again.

Undoubtedly, Attorney Linder will find these conditions placed on the continuation of his electronic filing privileges to be burdensome. Compliance with the conditions will require the expenditure of extra time on the front end of every case by Attorney Linder and his paralegal. But Attorney Linder should be reviewing and analyzing his clients' financial information and meeting with his clients for a review of their documents before those documents are signed and filed. Attorney Kugler argued that it is not unusual in a consumer practice for an attorney to have staff members prepare documents and use the attorney's credentials to file the documents. Although this is true, it is also true that many lawyers have taken the time to train their staff members more thoroughly than Attorney Linder has and they provide more supervision than was provided here. The problem here was not that Attorney Linder allowed his paralegal to assist him; it was that he allowed his untrained and unsupervised paralegal to prepare and file all of the documents in the case. The conditions placed on Attorney Linder are appropriate in view of his serious misconduct here.

### B. The Application is inadequate to justify an award of fees.

Attorney Linder's fee request has been denied as a sanction and therefore a full discussion of the Application is not necessary. There are, however, several serious deficiencies with the Application that must be briefly mentioned to make sure Attorney Linder is aware of what is required to be awarded fees for representing debtors before this Court.

Whenever a court considers an attorney's fee application, a variety of factors must be examined, including the amount of time spent by the attorney. 11 U.S.C. 330(a)(3); *In re Hart*, 540 B.R. 363, 370 (Bankr. C.D. Ill. 2015). If an attorney has no time records, required information cannot be provided to justify a fee award and all fees can properly be denied. *See In re Basham*, 208 B.R. 926, 931 (B.A.P. 9th Cir.) *aff'd sub nom In re Byrne*, 152 F.3d 924 (9th Cir. 1998); *In re Newman*, 270 B.R. 845, 847-48 (Bankr. S.D. Ohio 2001). Although Attorney Linder attached what he labeled as an itemization of his time to his Application, he has now admitted that he does not keep contemporaneous time records of his work on bankruptcy cases and therefore the time records included with his Application were reconstructed. Attorney Linder's failure to keep time records is problematic, but his lack of candor in his Application about the fact that the itemization attached was reconstructed, rather than based on actual records, is seriously troubling and forms a basis, in and of itself, to deny his fee request. *Hart*, 540 B.R. at 371.

Attorney Kugler suggested that keeping time records is burdensome when an attorney is generally going to be paid a flat fee or, as in this case, a "no-look" fee. But that position is short-sighted. This Court's Chapter 13 "no-look" fee is an amount presumptively reasonable to be awarded for the anticipated services to be rendered. *In re Brennan*, 2013 WL 4046447, at *6 (Bankr. C.D. Ill. Aug. 8, 2013). But when the quality of an attorney's work falls below expected standards, the "no-look" fee is not allowed and a fee application is required. *Id.* at *6-7. Absent contemporaneous time records, an attorney who is denied the "no-look" fee and

-17-

required to file a fee application will be caught short. *Hart*, 540 B.R. at 371.

The lack of time records also results in Attorney Linder having no basis to support his claim that he did, in fact, meet with the Debtors on numerous occasions or that he made a serious effort to determine whether Purchasing Power was a creditor. He says he checked the Debtors' credit report but has no records to prove that either. Contemporaneously kept time records are important in responding to inquiries from the UST, a case trustee, or the Court and for defending against claims made by dissatisfied clients. It is hard to imagine, in this day and age when so many time-keeping software programs are readily available, that a busy attorney such as Attorney Linder would make no effort to keep time records.

In addition to the lack of time records to support the fee request, the Application is defective because it claims fees for work performed by a paralegal without providing the necessary information to justify the request. A paralegal's time may be compensable when the paralegal performs legal work and has the knowledge and experience to do the work competently. 11 U.S.C. 330(a)(1)(A); *Brennan,* 2013 WL 4046447, at *7-8; *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 489-90 (Bankr. D. Utah 1991).

Here, not only was limited information about Attorney Linder's paralegal provided but the blame for many of the problems in the case was assigned to her. She was specifically identified as the one who cut corners. It is obvious that Attorney Linder's paralegal had inadequate training to do the work assigned to her without supervision. Attorney Linder clearly confused his paralegal's ability to

create bankruptcy documents—in the clerical sense, through the use of software—with the ability to create proper legal documents in compliance with the Code and Rules. Her failures must be assigned to him and, indeed, he admitted his ultimate responsibility for the errors here. Nothing in the Application or in any of the documents filed subsequently suggests that Attorney Linder's paralegal has the required knowledge and expertise to work independently and to be compensated at the rate of $125 per hour for her work. None of the time sought for her work would be compensable, even if all fees had not previously been denied as a sanction.

### IV. Conclusion

In filing the petition in this case without first obtaining the Debtors' "wet signatures" on it, Attorney Linder violated the Bankruptcy Code, Bankruptcy Rules, Judicial Code (Title 28), the Local Rules, and the Standing Order. The seriousness of his misconduct cannot be overstated. He bears the responsibility for what occurred and his deflection of some of the blame to his paralegal was not appropriate. He failed to established definitive office policies and to provide necessary supervision. For those reasons he must be sanctioned.

As a sanction, Attorney Linder's Application will be denied in its entirety and he will be ordered to disgorge the $1100 previously paid to him by the Debtors. His continued participation in this Court's electronic case filing system will be conditioned, as set forth above, upon his direct involvement in witnessing and inspecting all debtor signatures before documents are filed and upon his strict

compliance with his obligations under Rule 9011 with respect to every document he files.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###